[No. 2302]
## IN THE MATTER OF THE ESTATE OF ALBERT KATTENHORN, DECEASED.

[171 Pac. 164]

1. DESCENT AND DISTRIBUTION—COMMUNITY PROPERTY.
    Stats. 1915, c. 130, does not affect or repeal Rev. Laws, 2164, 2165, relating to descent of community property, and where spouse dies intestate all the community property goes to the surviving spouse.

APPEAL from Third Judicial District Court, Lander County; *Peter Breen*, Judge.

In the matter of the estate of Albert Kattenhorn, deceased. From a decree distributing all of the estate to Lulu Kattenhorn, widow of the deceased, Annie F. Kattenhorn appeals. **Affirmed.**

*Frank Curran* and *L. B. Fowler*, for Appellant:

Whether it is community or separate, the appellant, mother of the deceased, is entitled to one-half of the property. The estate consists of both community and separate property. In determining the rights of appellant, three provisions of law must be considered, namely, sections 2165 and 6125, Revised Laws, and subdivision 2 of an amendatory act relating to the estates of deceased persons, passed in 1915, and found in Statutes of 1915, at page 149. The father of Albert Kattenhorn died prior to the death of his son, the widow of Albert Kattenhorn is without issue of her marriage, and therefore the estate should go one-half to the surviving widow and one-half to the mother of the decedent.

The act of 1915 is in direct conflict with section 2165, Revised Laws. Section 2165 is altered by the act of 1915 in that it changes the rule in regard to community property in so far as a father or mother is concerned. As to other persons, the provisions of the section are in force, because they have not been changed by any subsequent enactment.

The administratrix, the widow, will contend that section 6125, Revised Laws, which reads, "The provision of this act, as to the inheritance of the husband and wife from

each other, applies only to the separate property of the intestate," is of consequence in considering the disposition of this estate. Such, however, from the standpoint of all the accepted rules of statutory construction and interpretation is absolutely untenable. This section was clearly controlling until the legislature, by a subsequent enactment of the descent provision of the same act, made it apply to community property as far as a mother or father is concerned. This the legislature clearly had the power to do; and in that the act of 1915 constitutes the latest enactment on the subject, section 6125 is necessarily abrogated and repealed in so far as it conflicts with the act of 1915.

"An intention will not be ascribed to the law-making power to establish conflicting and hostile systems upon the same subject, or to leave in force provisions of law by which the later will of the legislature may be thwarted and overthrown. Such a result would render legislation a useless and idle ceremony, and subject the law to the reproach of uncertainty and unintelligibility." (Lewis's Sutherland, Statutory Construction, p. 473.) Laws are presumed to be passed with deliberation, and with a knowledge of all existing laws on the same subject. (Idem, p. 459.) "Where the later or revising statute clearly covers the whole subject-matter of antecedent acts, and it plainly appears to have been the purpose of the legislature to give expression in it to the whole law on the subject, the latter is held to be repealed by necessary implication." (*Winslow* v. *Morton,* 118 N. C. 486, 491, 492.) A statute repeals by implication all existing statutes plainly inconsistent therewith. (*Ex Parte Maginnis,* 162 Cal. 200.) If two statutes are irreconcilably conflicting, the last enacted controls. (*State* v. *Esser,* 35 Nev. 429.) A statute conflicting with the provisions of an earlier statute on the same subject operates to the extent of the conflict as a repeal of the former statute. (*Griswold* v. *Griswold,* 23 Colo. App. 365.)

A statute revising the whole subject-matter of former acts, and containing their main provisions, and evidently

intended as a substitute for them, repeals them though it contains no express words to that effect. (*Garnett* v. *Goldman*, 135 Pac. 410.) A statute which is a complete revision of existing statutes on a subject is a substitute for the existing statutes, which must be deemed repealed. (*Santa Ana School District* v. *Talbert*, 19 Cal. App. 104.) The court in construing a statute must give effect to the legislative intent. (*State* v. *Ducker*, 35 Nev. 214.)

*Callahan & Brandon*, for Respondent:

The peculiar wording of the statute covering descent and distribution, referred to by counsel for appellant, occurs first in the amendment to the act to regulate the settlement of the estates of deceased persons, found in Statutes of 1903, p. 218, subd. 1. This subdivision was reenacted as a part of the law governing the estates of deceased persons by the legislature of 1911. (Rev. Laws. 6116.) In 1913 there were further amendments. (Stats. 1913, p. 56.) It will be noticed that the only change made by this later amendment is in the words "both community and separate." In 1915 a further amendment was made, providing that "all of the property, both community and separate, of the intestate, shall go to the surviving husband or wife." (Stats. 1915, p. 149.)

The act governing the property rights of husband and wife as it now stands in the Revised Laws has been the law of this state for a great many years, and the courts, both of original and appellate jurisdiction, have been engaged, prior and subsequent to the amendment of 1903, in construing and settling the meaning of the husband and wife act. (*In Re Williams's Estate*, 40 Nev. 241; 161 Pac. 741.)

By the Court, McCARRAN, C. J.:

To the marriage of Albert Kattenhorn and Lulu Kattenhorn there was no issue. Albert Kattenhorn died intestate; Lulu Kattenhorn survives. The district court in the probate proceedings found that the property of which Albert Kattenhorn died. possessed was in its

nature community. Lulu Kattenhorn, respondent here, contended in the district court, and that court sustained her contention, that she was entitled to a distribution of the entire estate of her deceased husband. Annie F. Kattenhorn, mother of the deceased, contended that as such she was entitled to have an interest in the estate of her deceased son distributed to her. By decree of the district court the entire estate was ordered distributed to Lulu Kattenhorn, the widow. From this decree the mother of the deceased appeals to this court.

Nothing appears in the record from which we would be required to disturb the finding of the trial court as to the nature and character of the property left by the deceased Kattenhorn.

One question, and one only, comes to this court for determination on appeal. In this is involved the interpretation of the force and effect of an amendatory statute enacted by the legislature of 1915, entitled:

"An act to amend an act entitled 'An act to amend section 1 of an act entitled "An act to regulate the settlement of the estates of deceased persons," approved March 23, 1897, and as amended and approved March 16, 1899, approved March 6, 1901,' and as amended March 11, 1913."

The amendatory act, in so far as its effect in the case at bar is concerned, is as follows:

"SECTION 1. Section 259 of the above-entitled act is hereby amended so as to read as follows:

"Section 259. When any person having title to any estate, not otherwise limited by marriage contract, shall die intestate as to such estate, it shall descend and be distributed, subject to the payment of his or her debts, in the following manner:

"First—If there be a surviving husband or wife, and only one child, or the lawful issue of one child, one-half to the surviving husband or wife, and one-half to such child or issue of such child. If there be a surviving husband or wife and more than one child living, or one child living and the lawful issue of one or more deceased

children, one-third to the surviving husband or wife, and the remainder in equal shares to his or her children, and to the lawful issue of any deceased child by right of representation. If there be no child of the intestate living at his or her death, the remainder shall go to all of his or her lineal descendants, and if all of the said descendants are in the same degree of kindred to the intestate, they shall share equally, otherwise they shall take according to the right of representation.

"Second—If he or she shall leave no issue, the estate shall go, one-half to the surviving husband or wife, one-fourth to the intestate's father and one-fourth to the intestate's mother, if both are living; if not, one-half to either the father or mother then living. *If he or she shall have no issue, nor father, nor mother, the whole community property of the intestate shall go to the surviving husband or wife, and one-half of the separate property of the intestate shall go to the surviving husband or wife, and the other half thereof shall go in equal shares to the brothers and sisters of the intestate, and to the children of any deceased brother or sister by right of representation.* If he or she shall leave no issue, or husband, or wife, the estate shall go, one-half to the intestate's father and one-half to the intestate's mother, if both are living, if not the whole estate shall go to either the father or mother then living. *If he or she shall leave no issue, father, mother, brother, or sister, or children of any issue, brother or sister, all of the property, both community and separate, of the intestate shall go to the surviving husband or wife.*" (Stats. 1915, p. 149.) We italicize.

The original act thus amended by the legislature of 1915 was a part of an act entitled "An act to regulate the settlement of the estates of deceased persons." The statute from its first enactment (Stats. 1861, p. 238) until the present time has referred to but one class of property. It has been subject to change by way of amendment, and on the several occasions when the language was changed it was either to make it more lucid

or to change the interest of the recognized heirs. (Stats. 1897, p. 158; Stats. 1899, p. 110; Stats. 1901, p. 44; Stats. 1903, p. 218; Stats. 1915, p. 149.) It never referred to other than the separate property of the person deceased. (*In Re Estate of Foley*, 24 Nev. 197, 51 Pac. 834, 52 Pac. 649.) The language of the amendatory statute of 1915 first appeared in the amendatory statute of 1903. (Stats. 1903, p. 218.) In the latter statute we find for the first time the expression:

"If he or she shall leave no issue nor father nor mother, the whole community property of the intestate shall go to the surviving husband or wife, and one-half of the separate property of the intestate shall go to the surviving husband or wife," etc.

The expression "the whole community property of the intestate shall go to the surviving husband or wife" we read as in the nature of a parenthetical clause, the substance of which the lawmaking body recognized as being a matter of course pursuant to the force and effect of, and taking its authority and existence from, a statute specifically affecting the disposition of the community property. (Rev. Laws, 2165.) There is nothing about the language of the second subdivision of the amendatory statute of 1915, any more than in the amendatory statute of 1903, which attempts to amend, modify, or repeal the statute dealing with the disposition of community property on the death of one spouse.

By section 11 of the act defining the rights of husband and wife, which section bears specifically on the distribution of community property, it is declared that community property on the death of the husband without will goes one-half to the wife and one-half to the issue. If there be no issue and no will, all community property goes to the surviving wife. Does the second subdivision of the amendatory act of 1915, concerning descent and distribution, designate any part of the community property as going to either the father or mother in the event of no issue? There is not a word in that statute that would convey such an idea with

any degree of definiteness whatever. The amendatory statute says no more with reference to the community property than does section 2165, Revised Laws, *i. e.*, if there be no issue and no will, the whole community property goes to the surviving spouse, and more, for, if there be separate property, one-half of that also goes to the survivor if there be no issue and a father or mother living, and if there be no issue and no father or mother and no brothers or sisters and no issue of brothers or sisters, then the whole property of the intestate, separate as well as community, goes to the surviving husband or wife.

Sections 10 and 11 of the statute defining the rights of husband and wife (Rev. Laws, 2164, 2165) prescribe:

"SEC. 10. Upon the death of the wife the entire community property belongs without administration to the surviving husband. * * *

"SEC. 11. Upon the death of the husband, one-half of the community property goes to the surviving wife, and the other half is subject to the testamentary disposition of the husband, and in the absence of such disposition goes to the surviving children equally, and in the absence of both such disposition and surviving children, the entire community property belongs without administration to the surviving wife. * * *"

In the case of *Clark* v. *Clark,* with eminent counsel on both sides, it was conceded, that, the property being community in nature, the case did not come within the statutes concerning descents. (*Clark* v. *Clark,* 17 Nev. 124, 28 Pac. 238.)

In *Re Foley's Estate,* this court had before it the consideration of the same statutes as here presented. True, the statutes were somewhat different at that time as to the distributees under the statute governing descent and distribution. The statute then provided:

"Second—If he or she shall leave no issue, the estate shall go in equal shares to the surviving husband or wife and to the intestate's father." (Gen. Stats. 1885, sec. 2981.)

It was there held that the lower court exceeded its jurisdiction in its decree distributing community property to other than the wife. Indeed, the most that was contended for there was the right of the heirs to ·take a part of the property, both community and separate, by reason of a written agreement to that effect entered into with the surviving wife. The court held in effect that even under such agreement the community property was not subject to distribution to the heirs, but passed to the wife. In our judgment, the amendment of 1915 was intended to effect no different result. The amendatory statute of 1915, in so far as it refers to community property, if anything, serves only to carry out the strict object and intent of the statute dealing with the disposition of community property heretofore quoted. That portion of the second subdivision in the amendatory statute of 1915 which refers to "the whole community property" as going to the surviving husband or wife is but a reenunciation of the statute directing the disposition of community property. (Rev. Laws, 2165.) The same may properly be said with reference to the latter part of the second subdivision, wherein it prescribes when and under what circumstances all the property, both community and separate, goes to the surviving husband or wife. The amendatory statute of 1915 in no wise conflicts with sections 10 and 11 of the statute defining the rights of husband and wife (Rev. Laws, 2164, 2165), bearing specifically on the disposition of community property. In the amendatory statute of 1915, as the same affects the settlement of estates of deceased persons, there is not a word or expression designating any part or fraction of the community property as going to, belonging to, or distributable to other than the husband or wife where there be such survivor. The amendatory statute of 1915 cannot be said to even impliedly repeal or affect sections 10 and 11 of the act pertaining to husband and wife, because as regards the subject of community property they stand and operate coordinately and harmoniously.

Any other interpretation of the amendatory act of 1915 would not only do violence to the cardinal principles of statutory construction, but would serve to destroy the community property law of this state, a law enacted and carried down on the statute books of this state under a policy coexistent with the history of the state itself. In the absence of specific and positive declaration by the legislative branch of the government, such havoc would not reasonably be contemplated.

The property here in question being found by the court to be common or community in nature, left by deceased unaffected by testamentary disposition or the rights of living issue, passes, pursuant to the specific language of section 2165 of our Revised Laws, to the surviving wife.

The order and decree of the lower court from which this appeal is taken is affirmed.

It is so ordered.

SANDERS, J.: I concur.

COLEMAN, J.: I concur in the order.